## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| DEDRA MANEOTIS, | Civil Action No. _____ |
| Plaintiff, | **CIVIL COMPLAINT AND JURY DEMAND** |
| v. | |
| FCA US LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................1

II. JURISDICTION ............................................................................................................2

III. VENUE ........................................................................................................................3

IV. PARTIES .....................................................................................................................3

    A. Plaintiff .................................................................................................................3

    B. Defendant ..............................................................................................................3

V. FACTUAL ALLEGATIONS .......................................................................................4

    A. Dedra Maneotis .....................................................................................................4

    B. FCA and the ZF Electronic Gear Shifter ..............................................................5

        1. FCA knew that the shifter was defective and unreasonably dangerous. ...................................................................................................7

        2. The National Highway Transportation Safety Administration has determined the ZF Shifter is poorly designed. ..........................................8

        3. Reports to NHTSA recount incidents of vehicle rollaway. ......................9

        4. FCA and ZF maintain that there is nothing wrong with the Defective Shifter Vehicles. .....................................................................11

        5. FCA's delayed and inadequate response to the defectively designed ZF Shifter has led to hundreds of accidents, many involving serious injury. ...........................................................................12

    C. The Crash and Failures ........................................................................................12

    D. Damages...............................................................................................................13

VI. VIOLATIONS ALLEGED..........................................................................................14

COUNT I  NEGLIGENCE ...................................................................................................14

COUNT II  NEGLIGENCE PER SE.....................................................................................17

COUNT III  STRICT PRODUCT LIABILITY.....................................................................18

REQUEST FOR RELIEF .....................................................................................................20

010621-11  885073 V1

DEMAND FOR JURY TRIAL ......................................................................................20

010621-11  885073 V1

## I.      INTRODUCTION

1.      One of the most basic safety features in every car is the gear shifter that causes a stationary car to remain stationary *unless and until* the driver wants the car to move. The design of a gear shifter must be such that drivers know when a car is safe to exit because it is in the "park" mode, and it must include a safety override that automatically puts the car in park or engages the parking brake when the driver gets out of the car.

2.      FCA US LLC ("FCA") broke this basic rule.  In its 2012-14 Dodge Chargers and Chrysler 300s, and 2014-15 Jeep Grand Cherokees ("Defective Shifter Vehicles"), FCA installed gear shifters, designed and manufactured by ZF Friedrichshafen AG ("ZF"). Departing from the long established "PRND" gear selector that provided a distinct position of the shifter for each gear, ZF shifters were electronic and never actually "shifted" into any gear, instead returning to a central location after being engaged (the "ZF Shifter"). The ZF Shifter design is dangerously defective because there is not any tactile or position feedback to the operator as to whether the car has actually been placed into the safe-to-exit "park" gear, nor a safety override that automatically puts the car in "park" or applies the parking brake if the driver gets out of the car.

3.      The safety issue is real: well over 300 accidents have already been reported, causing dozens of serious injuries.

4.      The design defect was avoidable.  FCA competitors, including BMW, have for several years used similar electronic shift levers that return to center after being engaged.  But on the BMW, if the car is not in "park," and the driver opens the door and unbuckles the seat belt, the car automatically shifts into "park," preventing rollaway incidents and accidents.

5.      The Audi A8 luxury sedan used the identical ZF Shifter, but Audi did not introduce a single A8 into the market before designing and implementing a safety override that

-1-

automatically engaged the electronic parking brake if the driver's door was opened and the seatbelt unbuckled.  FCA could have provided a similar safety override, but it chose not to.

6.      Though complaints and accident reports have been ongoing for years , FCA has only recently initiated a voluntary recall of the over 811,000 Defective Shifter Vehicles in the United States. Initially, FCA only sent a letter to owners describing the design defect of the ZF Shifter, even though it knew a viable fix existed and could solve the problem.  After years of blaming rollaway accidents on their customers and telling them the cars were not defective, the widely publicized death of Anton Yelchin – a popular young actor, and the filing of lawsuits, caused FCA to finally change its tune and issue a recall to purportedly add an "autopark" feature to the defective shifter mechanism.

7.      FCA's unreasonable delay in fixing the defect and its warning letter was too little, too late for Dedra Maneotis.  Nearly a million Defective Shifter Vehicles remain in unsuspecting owners' driveways and garages. As a result of this dangerous defect, the Defective Shifter Vehicles are a hazard to their owners and the public

8.      Plaintiff seeks damages for the conduct of FCA related to the defectively designed gear selector as alleged in this Complaint.  Specifically, Plaintiff seeks compensation for rehabilitation, medical bills, pain and suffering, and punitive damages for FCA's knowing fraud that put Dedra Maneotis at risk.

## II.      JURISDICTION

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is a civil action in which the parties are citizens of different states.

### III.    VENUE

10.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Plaintiff resides in this District and the Defective Shifter Vehicle is owned by her employer, who is domiciled in this District.  FCA has marketed, advertised, sold, and leased the Defective Shifter Vehicles within this District.

### IV.    PARTIES

**A.    Plaintiff**

11.    Plaintiff Dedra Maneotis is a resident of Colorado domiciled in Craig, Colorado. Dedra's employer bought a 2014 Jeep Grand Cherokee in Colorado on April 29, 2013, which she was permitted to use.  Unknown to Dedra at the time the vehicle was purchased, the vehicle was equipped with a ZF Shifter that is defectively designed.  The design defect allows the driver to get out of the car while the car is not in "park," which can cause the car to roll away from its parked position. The defect in the Jeep Grand Cherokee has caused Plaintiff serious physical injury.  FCA knew that the ZF Shifter could lead to vehicle rollaway incidents, but did not disclose this defect to Plaintiff, so Plaintiff operated the vehicle on the reasonable, but mistaken, belief that the Jeep Grand Cherokee was safe to operate as designed.

**B.    Defendant**

12.    Defendant FCA US LLC ("FCA") is a limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by holding company Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom. FCA is doing business in the District of Colorado and elsewhere. FCA's principal place of business and headquarters is in Auburn Hills, Michigan.

010621-11  885073 V1

13.     FCA (commonly referred to as Chrysler) is a motor vehicle "Manufacturer" and a licensed "Distributor" of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles ("vehicles"). FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands. Other major divisions of FCA include Mopar, its automotive parts and accessories division, and SRT, its performance automobile division. As of 2015, FCA is the seventh largest automaker in the world by unit production.

14.     FCA's business operations in the United States include the manufacture, distribution, and sale of motor vehicles and parts through its network of independent, franchised motor vehicle dealers. FCA is engaged in interstate commerce in that it sells vehicles through this network located in every state of the United States.

15.     FCA and/or its affiliates and agents developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Defective Shifter Vehicles.

## V.     FACTUAL ALLEGATIONS

### A.     Dedra Maneotis

16.     Dedra Maneotis is a 77-year-old mother of four and grandmother of six. Before she was run over by her car, Dedra loved playing with her grandchildren and great-grandchild and working part-time at her family's business. She had an active lifestyle, caring for and playing with her great-grandchild, and attending school activities for her grandchildren. She loved to travel and took pride in fastidiously keeping her home in order.

17.     But on December 20, 2013, Dedra's Jeep Cherokee rolled back onto her as she was trying to get out through the driver's side door. Dedra was unable to hold on, fell out of the

vehicle, and was flipped over by the driver-side wheel. Dedra spent until New Year's Day in the hospital, causing her to miss Christmas and her family's annual Greek New Year's Eve party because she was hospitalized.

18.    Today she is numb from the knee to the toes, and her legs get tight quickly. She cannot walk more than 50 yards without problems.

19.    From the time of the crash until now, she has relied on pain medication for near-constant pain – she cannot even sit down without pain.

20.    Because of her injuries, Dedra cannot participate fully in her family life. She cannot travel, maintain her home, or play with her grandchildren or great-grandchild as she once did. Together with her pain, this has severely diminished her quality of life.

**B.    FCA and the ZF Electronic Gear Shifter**

21.    Dedra's vehicle – a 2014 Jeep Grand Cherokee – was equipped with the ZF Shifter, which is an 8-speed transmission with an electronic gear selector.

22.    On its website announcing a "voluntary recall" of these vehicles, FCA describes the ZF Shifter as follows:

> The vehicles affected by this recall are equipped with electronic shift levers that return to the same position after each manipulation. Gear selection is conveyed to the driver by multiple sets of indicator lights, not gear-selector position, and unless due care is taken, drivers may draw erroneous conclusions about the status of their vehicles.[1]

23.    The ZF Shifter does not have positions for each gear setting, i.e., Park, Reverse, Neutral, Drive ("PRND").  Rather, it always rests in the same position after having been pushed

---

[1] *See* http://media.fcanorthamerica.com/newsrelease.do?id=17455&amp;mid=1 (last viewed on July 6, 2016).

up or down from that position.  The following is a picture of the ZF Shifter in a Jeep Grand

Cherokee:



24.     Importantly, the ZF Shifter does not include a safety override that prevents the

driver from getting out of the car when it is not in "park."  Other manufacturers, including

BMW, use monostable electronic gear shifters like the ZF Shifter, but *the BMW gear shifter has

a safety override*. If the BMW is not in "park" and the driver's door is opened while the seatbelt

is unbuckled, the car *automatically shifts into "park."* This safety override eliminates the

possibility of the rollaway incidents that plague the Defective Shifter Vehicles.

25.     Likewise, the Audi A8 luxury sedan uses the same ZF Shifter that FCA used on

the Defective Shifter Vehicles.  But Audi did not sell a single A8 equipped with the ZF Shifter

until it had developed a safety override that automatically engaged the electronic parking brake

on the car if the driver's door is opened while the seatbelt is unbuckled.

26.    When FCA first sold a Defective Shifter Vehicle, it had the ability and technological capability to install a safety override that would have prevented the rollaway incidents that have plagued the Defective Shifter Vehicles and caused hundreds of accidents, dozens of injuries, and at least one death.  It simply chose not do so.

27.    FCA has already recognized that the ZF Shifter has a problem.  As noted on its website, "To address customer satisfaction issues, the Company began equipping the Charger and 300 with a new shift-lever design in model-year 2015. The Grand Cherokee's shift-lever was updated in model year 2016."[2]

28.    In FCA's own recall chronology it states that as of April 12, 2016, "FCA has identified approximately 700 field reports potentially related to this issue which includes 212 crashes, 308 claims of property damage and 41 injuries."

**1.    FCA knew that the shifter was defective and unreasonably dangerous.**

29.    Upon reasonable inspection and testing of the Grand Cherokee and each of its components, FCA knew or should have known the Grand Cherokee was defective and unreasonably susceptible to failure.

30.    FCA knew or should have known of the defective design and manufacture of the Grand Cherokee and failed to take reasonable corrective steps in curing the defects.

31.    FCA had sufficient knowledge, expertise, availability, and resources to inspect the Grand Cherokee for defects before its sale.

32.    FCA failed to properly inspect and confirm the safety of the Grand Cherokee before its entry into the stream of commerce and sale.

---

[2] *See id.*

33.     FCA failed to complete a reasonable inspection of the Grand Cherokee, which inspection would have revealed the unreasonably high potential for the failure of the Grand Cherokee.

34.     The Grand Cherokee was manufactured without adequate quality control measures and using inappropriate manufacturing procedures.

35.     On information and belief, FCA's knowledge as described in this Complaint is reflected in its internal communications, including memoranda and e-mail.

36.     FCA's knowledge as described in this Complaint is reflected in internal communications, including memoranda and e-mail; in reports of other incidents – including those compiled in the NHTSA database, which FCA regularly reviews – involving FCA's vehicles; in FCA's 'compilations and analyses of crash data; and in the results of tests conducted by Defendant and others, including but not limited to failure mode and effects analyses (FMEA), human factors simulations, pre-release vehicle evaluation tests, computer simulations, and cost/benefit analyses.

**2.      The National Highway Transportation Safety Administration has determined the ZF Shifter is poorly designed.**

37.     The National Highway Transportation Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") opened Preliminary Evaluation PE15-030 on August 20, 2015, to investigate 14 reports of rollaway 2014-15 Jeep Grand Cherokee vehicles.[3]

---

[3] *See* http://www-odi.nhtsa.dot.gov/owners/SearchResultsByUrlCode.action?referenceSearch.requestId=48801&referenceSearch.urlCode=RGRCHIUC3ZXFGZZ (last accessed June 20, 2016).

38.     NHTSA testing during PE15-030 indicated that the operation of the monostable shifter is not intuitive and provides poor tactile and visual feedback to the driver, increasing the potential for unintended gear selection.

39.     ODI's analysis of the PE15-030 complaint and field report data identified 306 incidents of vehicle rollaway following intended shifts to Park in the 2014-2015 Grand Cherokee. These resulted in 117 alleged crashes. Twenty-eight of the crashes reportedly caused injuries, including three with a fractured pelvis and four others requiring some degree of hospitalization (a ruptured bladder, fractured kneecap, broken ribs, and damaged right leg). Other injuries include reports of a broken nose, facial lacerations requiring stitches, sprained knees, severe bruising, and trauma to legs.

40.     Model year 2012-2014 Chrysler 300 and Dodge Charger vehicles (L-cars) equipped with 3.6L engines use the same defective ZF Shifter found in the Jeep Grand Cherokee. ODI received 8 complaints, including 4 crashes and 2 injuries on the subject L-cars.

41.     In early February 2016, amid continuing reports of rollaway vehicles, NHTSA upgraded its investigation to an engineering analysis, after determining the issue is one of design rather than defect.[4]

**3.     Reports to NHTSA recount incidents of vehicle rollaway.**

42.     NHTSA has received hundreds of reports of rollaway incidents involving the Defective Shifter Vehicles, including the reports copied verbatim below:

> MY WIFE PULLED THE CAR INTO A COMMUNITY PARK
> AND PUT THE JEEP IN PARK AND OPENED THE DOOR TO
> GRAB HER SONS LOST DOG. NEXT THING SHE KNOWS
> THE JEEP IS ROLLING, AND PROCEEDS TO RUN HER
> OVER AND CONTINUES DOWN A SMALL HILL INTO
> SOME TREES. SHE WAS TAKEN TO THE HOSPITAL VIA A

---

[4] *See id.*

911 CALL AND WE ARE NOW WAITING FOR RESULTS
FROM AN MRI. THIS PROBLEM COULD HAVE KILLED
HER IF SHE DIDN'T GET HER HEAD OUT OF THE WAY.

ON AUGUST 19, 2014, I STEPPED OUT OF MY
STATIONARY 2014 JEEP GRAND CHEROKEE OVERLAND
BELIEVING I HAD PUT THE VEHICLE IN PARK ON A
GENTLE CITYSTREET SLOPE WHEN IT SUDDENLY
MOVED BACKWARD, ROLLING OVER MY LEFT LEG AND
SEVERELY DAMAGING MY KNEE, SKIN, ARTERY, AND
QUAD MUSCLES. MY WIFE IMMEDIATELY CALLED AN
AMBULANCE, WHICH TRANSPORTED ME TO A LOCAL
HOSPITAL, WHERE DOCTORS SURGICALLY ATTACHED
AN "EXTERNAL FIXATOR" IN THREE PLACES,
STABILIZING AND COMPLETELY IMMOBILIZING MY LEG
(FOR THE NEXT FIVE WEEKS). AFTER A SECOND
SURGERY AND OVER A YEAR OF PAINFUL AND
ARDUOUS THERAPY LATER, I CAN NOW WALK WITH A
KNEEBRACE, HALTINGLY AND WITH A NOTICEABLE
LIMP. . . ALL DUE TO THE JEEP GRAND CHEROKEE'S
TRANSMISSION THAT DOES NOT ACCURATELY
INDICATE WHAT GEAR IT IS IN! UNLESS ONE IS
CONCENTRATING 100+% OF THE TIME ON THE CONSOLE
SHIFTER AND CONSTANTLY GLANCING AT THE
INDICATOR LIGHTS ON THE VEHICLE DASHBOARD THE
DRIVER NEVER KNOWS WHAT POSITION THE JEEP'S
TRANSMISSION IS IN! THE SHIFTER ON THE CONSOLE
ALWAYS LOOKS EXACTLY THE SAME, NO MATTER
WHAT GEAR HAS SUPPOSEDLY BEEN SELECTED. WE
HAD NO ABSOLUTELY FOREWARNING OF THE
POTENTIAL LIFE THREATENING PROBLEM INHERENT IN
THIS VEHICLE'S DESIGN, AND I CAN ONLY THANK GOD
THAT I'M STILL ALIVE TODAY. LAST WEEK WE WERE
SURPRISED TO RECEIVE WRITTEN NOTIFICATION FROM
FIAT CHRYSLER AUTOMOBILES THAT THE COMPANY
AND NHTSA HAD RECALLED 2014 JEEP GRAND
CHEROKEES FOR THE SPECIFIC DEFECT DESCRIBED IN
MY INCIDENT ABOVE! (FINALLY! VINDICATION!) THE
RECALL NUMBER IS SHOW BELOW, I BELIEVE. FCA
VEHICLE RECALL NUMBER: S27 / NHTSA 16V240

ON FEBRUARY 25TH, I SHIFTED MY CAR INTO PARK AND
WAS GETTING OUT TO LOOK AT BACK WIPER WHICH
SEEMED TO BE STUCK. I HAD LEFT THE CAR RUNNING.
THE CAR TOOK OFF IN GEAR AND CAUSED ME TO FALL
AND BREAK MY ANKLE IN AN OPEN COMPOUND
FRACTURE THAT REQUIRED HOSPITALIZATION AND

SURGERY. MY JEEP ENDED UP HITTING A PARKED
GARBAGE TRUCK AND SUSTAINED ABOUT $5000
DAMAGE. WHO KNOWS WHAT MY MEDICAL BILLS WILL
END UP BEING. PLUS MY ANKLE MAY NEVER BE RIGHT.
I WILL INCLUDE A PHOTO OF MY CAR AND XRAY. IT
HAPPENED ON PRIVATE PROPERTY (TACO BELL
PARKING LOT). A POLICE OFFICER CAME AND PARKED
MY CAR AND CALLED AN AMBULANCE BUT DID NOT
MAKE A REPORT SINCE ON PRIVATE PROPERTY. WE
HAVE NOT HEARD FROM GARBAGE TRUCK AND DOUBT
IT DID ANYTHING TO IT. THE CAR WAS IN PARK AND
NOT SURE HOW FAST WAS GOING WHEN HIT THE
GARBAGE TRUCK

**4.      FCA and ZF maintain that there is nothing wrong with the Defective Shifter Vehicles.**

43.      While FCA has acknowledged it knows of 41 injuries that may be related to what it describes as a "confusing" shifter, it has stated: "the vehicles involved in these events were inspected and no evidence of equipment failure was found."[5]

44.      ZF issued a press release stating:

ZF supplies gearshift systems to automotive manufacturers
according to their technical and design specifications. The
manufacturer designs the integration of the gearshift system into
the vehicle operating concept and develops the respective
safeguard mechanisms. ZF delivered a fully functional state-of-the-
art product, which was integrated into the vehicle architecture by
the manufacturer. As such, ZF is unaware of any indications that
claims could be made against ZF in the context of the current
NHTSA investigations of the FCA vehicle models "2014-15 Grand
Cherokee; 2012-14 Charger & 300 w/3.6 l engine".[6]

45.      The Defective Shifter Vehicles have been under investigation by NHTSA since August 20, 2015, yet FCA concealed detailed information on the defect by marking as confidential all but two pages from its owner's manual in the presentation it provided to NHTSA

---

[5] *See* http://jalopnik.com/fiat-chrysler-is-recalling-1-1-million-cars-because-peo-1772561060 (last accessed on July 6, 2016).

[6] *See id.*

in response to its investigation.  FCA has purposefully kept consumers and its customers in the dark about the ZF Shifter defect.  This shroud of secrecy has unquestionably increased the risk of accidents, injury, and death to consumers because it has delayed consumer awareness to take extreme care to ensure that the "park" position is engaged before getting out of a Defective Shifter Vehicle.

     **5.**     **FCA's delayed and inadequate response to the defectively designed ZF Shifter has led to hundreds of accidents, many involving serious injury.**

46.     FCA's foot-dragging on notifying its customers of the dangerous ZF Shifter defect and taking steps to correct it is, unfortunately, business as usual for FCA.  As reported in the New York Times on June 21, 2016, Center for Auto Safety Executive Director Clarence Ditlow said, "There was no sense of urgency on Chrysler's part or NHTSA's part given the potential for death or injury." The Times points out that NHTSA "had publicly chastised the company, which acknowledged delaying recalls in almost two dozen cases going back to 2013 and affecting millions of vehicles." NHTSA head Mark Rosekind had said at the time, "[t]his represents a significant failure to meet a manufacturer's safety responsibilities."

47.     Chrysler promised to speed up its recalls and agreed to pay close to $105 million in penalties, but this case evidences the fact that little has changed. FCA and its corporate culture is still putting profits ahead of safety, and FCA customers are being maimed, even killed, as a result.

**C.**     **The Crash and Failures**

48.     On December 14, 2013, Dedra Maneotis pulled up a hill into her driveway and put her 2014 Grand Cherokee in Park.

49.     As she opened the door and stepped one foot out, the car started to roll backward.

50.     With her left leg out, she tried to hop along with her left foot while holding on to the door and the steering wheel.

51.     But the car door clipped a half-height decorative wall and bent backward, causing Dedra to lose her grip on the door handle. She struggled to stay upright as the car gained speed down the hill.

52.     Dedra grew tired and had to let go of her hold on the vehicle. She fell, and her leg got wrapped up in the front driver-side wheel. The Jeep rolled up onto the half-height decorative wall and over Dedra's leg. It then rolled over, and then spun out on, Dedra's leg, causing the injury. While the car moved backward to the street, the leg that remained in the car caused her to flip around in the street, preventing a dangerous head injury.

53.     Immediately after the incident, Dedra reported it to the police. Officer Ryan M. Fritz responded and reported that "due to the electronic shifting system in this vehicle . . . [it] was not in 'Park' like she [Dedra] thought it was." Officer Fritz further reported that the vehicle caused extensive damage and injured Dedra in the lower legs.  Dedra was hospitalized for these injuries.

**D.     Damages**

54.     Dedra continues to undergo extensive rehabilitation and medical treatment.

55.     As a result of the Grand Cherokee's failure to keep her vehicle in park, Dedra has suffered numerous medical issues, including, but not limited to,

     a.     nerve damage;
     b.     numbness from knees to toes;
     c.     constant pain, including constant pain in her leg;
     d.     tightness in her leg;
     e.     knee damage;
     f.     scarring;
     g.     pain while sitting;
     h.     difficulty walking for more than a few minutes; and
     i.     inability to perform basic household chores.

56.     The acts and omissions of FCA were the direct and proximate cause of Dedra's injuries and damages.

57.     As a result of the defective ZF Shifter installed in Dedra's Grand Cherokee, and its failure to keep the vehicle in park, Dedra will require a lifetime of physical and mental assistance and medical treatment.

58.     As a direct and proximate result of the Grand Cherokee's failure, Dedra suffered – and will continue to suffer – non-economic damages including, but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional stress, and impairment of quality of life.

59.     As a direct and proximate result of the Grand Cherokee's failure, Dedra suffered – and will continue to suffer – temporary and permanent impairment, physical impairment, and disfigurement.

## VI.     VIOLATIONS ALLEGED

## COUNT I

## NEGLIGENCE

60.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

61.     FCA, as a designer, manufacturer, and seller of the Grand Cherokee under C.R.S. § 13-21-401, owed Plaintiff a duty to exercise reasonable care to prevent the Grand Cherokee from creating an unreasonable risk of harm to Plaintiff, a person reasonably expected to use the Grand Cherokee by FCA and who did so in a manner which FCA might have reasonably expected.

62.     The Grand Cherokee failed because FCA failed to exercise reasonable care to prevent the Grand Cherokee from creating an unreasonable risk of harm.  FCA's failures

occurred when it manufactured, designed, engineered, developed, tested, approved, inspected, repaired, labeled, advertised, promoted, marketed, distributed, wholesaled, prepared for distribution, and/or sold the Grand Cherokee.

63.     FCA's negligent acts include but are not limited to:

a.      negligently designing the Grand Cherokee;

b.      negligently designing and incorporating, among other components, a defective electronic shifter;

c.      failing to exercise reasonable care to prevent the Grand Cherokee from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use the Grand Cherokee in a foreseeable manner;

d.      failing to warn the consumer of the risk of harm or injury where a reasonably careful person would have done so under the circumstances;

e.      failing to incorporate safer alternative designs and formulations during the design and manufacture of the Grand Cherokee that were practicable and would have eliminated the unsafe nature of the Grand Cherokee without impairing its usefulness;

f.      failing to adequately inspect and test the Grand Cherokee before sale or distribution; and

g.      failing to recall and remove the Grand Cherokee from the stream of commerce before it malfunctioned during Plaintiff's use.

64.     Dedra was a person who FCA reasonably expected, or should have reasonably expected, to use or be affected by the Grand Cherokee.

65.     FCA knew, or should have known in the exercise of reasonable care, of alternative designs that were technologically and economically feasible, and that would better protect occupants from the negligently designed and manufactured defects described above, but FCA chose not to incorporate these alternative designs.

66.     The risk of rollaway was known or knowable to FCA in light of the recognized and prevailing scientific and technical knowledge available at the time of manufacture.

67.     FCA knew or should have known in the exercise of reasonable care that (1) the use of the Grand Cherokee may be harmful or injurious to the user, and (2) that risk of harm and injury was not obvious to the user.

68.     Defendant's inadequate actions, including its quality-control measures and inappropriate manufacturing practices and procedures, contributed to the failure of the Grand Cherokee on December 20, 2013, when Dedra was attempting to park it and it failed catastrophically.

69.     The risk of serious injury or death resulting from a rollaway incident was not obvious to Plaintiff or to the general public.

70.     FCA had a duty to warn Dedra and the general public given the high likelihood of accident and the seriousness of consequences, such as death or serious injury.

71.     A reasonably prudent manufacturer would warn drivers that the monostable shifter fails to shift the vehicle into park and that the vehicle is therefore susceptible to rollaway, which can cause serious injury or death.

72.     FCA was obligated to warn, and should have warned, users of the danger involved in using the vehicle.

73.     FCA failed to provide adequate warnings or instructions that informed an ordinary user of the specific risk of harm – not apparent to an ordinary user – involved in any intended or reasonably expected use.

74.     FCA failed to provide adequate warnings or instructions that informed an ordinary user of the specific risk of harm – not apparent to an ordinary user – involved in

-16-

any failure to properly follow instructions when using the product for its intended and reasonably expected use.

75.     As a direct and proximate result of Defendant's breach of its duties, Dedra sustained injuries, damages, and losses that were caused by FCA's negligence while the Grand Cherokee was being used in a manner FCA should reasonably have expected.

## COUNT II

## NEGLIGENCE PER SE

76.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

77.     FCA was negligent *per se*.

78.     Under 49 U.S.C. § 30101, *et seq*., the purpose of which was to reduce traffic accidents and death and injuries from traffic accidents, and 49 C.F.R. § 573.6 promulgated thereunder, FCA was required to "furnish a report to the NHTSA for each defect . . . related to motor vehicle safety."

79.     This statute was enacted for public safety and designed to protect Plaintiff and other drivers and passengers of vehicles from defective conditions in their vehicles that may cause death or physical injury.

80.     The ignition switch defect in Plaintiff's vehicle was a defect that related to motor vehicle safety because it resulted in a failure of a vehicle to remain stationary when the occupant intended it to do so.  FCA was therefore required to furnish a defect report to the NHTSA.  FCA failed to furnish the required report for years after knowing about the rollaway safety defect and therefore violated the statute and regulations promulgated thereunder.

81.     Plaintiff suffered serious personal injury as a direct and proximate result of FCA's failure to furnish the required defect reports to the NHTSA.

82.     FCA's statutory violation for failing to file the required defect reports was a proximate cause of Plaintiff's injuries. Had the requisite defect reports been furnished to the NHTSA, Plaintiff's vehicle would have been recalled and the defect corrected or, alternatively, Plaintiff would have been on notice of the defective condition in her vehicle and could have avoided driving the vehicle while the defective condition persisted.

## COUNT III

## STRICT PRODUCT LIABILITY

83.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

84.     Defendant is a "manufacturer" and seller under C.R.S. § 13-21-401, as it designed, assembled, fabricated, produced, constructed, and prepared the Grand Cherokee before it was sold. Defendant is a "seller" under the same statute because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for resale or use, with actual knowledge of the defects in the Grand Cherokee.

85.     Defendant sold the Grand Cherokee to a business affiliated with Dedra Maneotis.

86.     FCA placed the Grand Cherokee in the stream of commerce and expected it to reach the user or consumer without substantial change in the condition in which it was sold. Indeed, it reached Dedra Maneotis – someone who would reasonably be expected to use, consume, or be affected by the Grand Cherokee – without substantial change in the condition in which it was sold.

87.     The Grand Cherokee was defective, and its defects are outlined throughout this Complaint.  Generally, they comprise the design and provision of a dangerous, defective shifter and, despite knowledge of the defects, the failure to warn consumers about the shifter's defects.

-18-

88.     In situations such as Dedra's – where the driver used the vehicle as intended and in a foreseeable and reasonable manner – the vehicle should not fail.

89.     Nevertheless, the Grand Cherokee failed, and it did so because of design defects in the Grand Cherokee existing when it left the manufacturer's control.

90.     Defendant knew or should have known of the defective design of the Grand Cherokee and that, as a result, it was unreasonably dangerous.

91.     While history has shown the ZF Shifter causes serious injury and death to operators, it adds no additional utility beyond that offered by traditional automatic shifters, which were readily available, inexpensive, and devoid of the unsafe aspect of the ZF shifter. Had a traditional shifter been used, the risk of injury or death from an inadvertent vehicle rollaway would have been eliminated or rendered insignificant.

92.     But, beyond this, FCA could still have kept its drivers safe from the ZF shifter by incorporating a safety override (as it did for other cars) that automatically engaged the electronic parking brake when the driver's door was opened and the seatbelt was unbuckled.  This override would cure the unsafe aspect of the ZF Shifter without impairing any purported usefulness or imposing unreasonable costs.   This sensible, cost-effective feature would have prevented Dedra's and many others' injuries and harm.

93.     The Jeep Grand Cherokee and ZF Shifter performed exactly as intended by FCA, and yet the vehicle was unreasonably dangerous. The danger inherent in the ZF shifter was not obvious to Dedra Maneotis or the general public, nor could they have avoided danger with additional care in the use of the shifter.

95.     The defects in design and inspection made the Grand Cherokee unreasonably dangerous, unfit, and unsafe for its intended use and caused the Grand Cherokee to fail to perform as an ordinary user would expect when used in its intended and foreseeable manner.

96.     Defendant did not warn or alert purchasers or users of the foregoing dangers, despite knowledge of them.

94.     As a direct and proximate result of the defects in the Grand Cherokee's design and manufacture and FCA's failures to warn, Dedra Maneotis has sustained injuries, damages, and loss.

95.     Defendant is strictly liable to Dedra Maneotis for the injuries and damages caused by the above defects and inadequacies in the design and manufacture of the Grand Cherokee.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Dedra Maneotis prays for judgment against Defendant FCA in an amount to be determined by the trier of fact for her losses, damages, and harms, economic and noneconomic, for punitive and statutory damages, and for all costs, attorneys fees, expert witness fees, filing fees, pre-judgment and post-judgment interest, and such other further relief as the Court may deem appropriate, just, and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

DATED:  August 12, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Robert B. Carey*
    Robert B. Carey
HAGENS BERMAN SOBOL SHAPIRO LLP
2301 E. Pikes Peak Avenue
Colorado Springs, CO 80909
Telephone: (719) 635-0377
Facsimile: (719) 635-0377
Email: rob@hbsslaw.com

Steve W. Berman (*pro hac vice to be filed*)
Thomas E. Loeser (*pro hac vice to be filed*)
Jessica Thompson (*pro hac vice to be filed*)
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Tel:  (206) 623-7292
Fax:  (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com
jessicat@hbsslaw.com

*Attorneys for Plaintiff*